UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 02-80770-CIV-HURLEY/HOPKINS

SECURITIES AND EXCHANGE
COMMISSION,

       Plaintiff,

vs.

UNCOMMON MEDIA GROUP, INC.;
LAWRENCE GALLO; and
DOUGLAS RASBERRY,

       Defendants.

_____/

## REPORT AND RECOMMENDATION AS TO PLAINTIFF'S MOTION TO SET A CIVIL PENALTY AGAINST DEFENDANTS LAWRENCE GALLO AND DOUGLAS RASBERRY (DEs 34-1, 35-1)

THIS CAUSE comes before the Court upon an Order referring Plaintiff's Motion to Set a Civil Penalty Against Defendants Lawrence Gallo and Douglas Rasberry (DEs 34-1, 35-1) to the undersigned Magistrate Judge for Report and Recommendation. (DE 39). Defendants failed to file a memorandum in opposition as required by the local rules. This matter is now ripe for review. For the reasons stated below, the undersigned **RECOMMENDS** that Plaintiff's Motion to Set a Civil Penalty be **GRANTED** and the District Court impose a one-time, third tier penalty against each individual defendant in the amount of $110,000.

## I.   BACKGROUND

### A.   *The Fraudulent Scheme*

Beginning in late-2000, Defendants Uncommon Media Group, Inc. ("Uncommon Media"), Lawrence Gallo ("Gallo") and Douglas Rasberry ("Rasberry") (collectively "Defendants") participated in "a scheme involving a purported European-based investment fund (the 'Fund') that would purchase shares of Uncommon Media stock provided that the Fund's representative and several of his associates received undisclosed kickbacks."[1] (DE 1 ¶ 9). "Unbeknownst to Defendants, the Fund never existed." (*Id.*). "Its 'representative' was actually an undercover agent of the Federal Bureau of Investigation ('UCA') posing as a corrupt securities trader employed by the U.S. based corporate representative of the Fund." (*Id.*).

"The UCA and his associates told Raspberry and Gallo that the UCA worked with two due diligence officers who reviewed and approved securities to be purchased by the Fund." (*Id.* ¶ 10). "The UCA and his associates further stated that a purported manager of the Fund was corrupt and had knowledge of the UCA's illicit activities." (*Id.*).

---

[1] At all relevant times, Gallo was "the chairman, chief executive officer, and a director of Uncommon Media" and Rasberry was "an undisclosed control person of Uncommon Media." (DE 1 ¶¶ 3–4).

"The UCA and his associates explained details about the Fund to Gallo and Rasberry, and how each could profit if the Fund purchased Uncommon Media stock." (DE 1 ¶ 11). "Gallo and Rasberry agreed to participate in the scheme if they received a portion of the proceeds." (*Id.*).

"It was agreed that the Fund would purchase $8 to $10 million worth of Uncommon Media common stock from Rasberry and others in a private, undisclosed sale." (*Id.* ¶ 12). "Rasberry, who controlled approximately 35% of Uncommon Media's outstanding common stock and nearly 100% of its free trading shares, would immediately kickback approximately 45% of the purchase price to the UCA and his associates." (*Id.*). "Rasberry had created at least ten different offshore entities to avoid reporting his ownership of Uncommon Media stock in the company's filings with the [Securities and Exchange Commission]." (*Id.*). "Each entity held less than 5% of Uncommon Media's shares issued and outstanding." (*Id.*).

"Gallo was to receive as much as $2 million in proceeds from the sale to the Fund in an offshore account." (DE 1 ¶ 13). "He intended to keep a portion of the proceeds for himself and deliver the remainder to Uncommon Media." (*Id.*). "Shortly thereafter, the UCA and his associates cancelled the transaction with Gallo and Rasberry." (*Id.* ¶ 14).

**B.     The Misleading Filings**

"On April 30, 2001, Uncommon Media filed its annual report with the Commission on a Form 10-KSB/A for the year [ending] December 31, 2000 ('Form 10-KSB')." (DE 1 ¶ 16). "The Form 10-KSB, signed by Gallo, failed to disclose material information concerning Rasberry's beneficial ownership of Uncommon Media stock." (*Id.*). "The Form 10-KSB purportedly identifies 'the only person who own of record or are known to own, beneficially, more than 5% of the Company's common stock,' but makes no mention of Rasberry, who owned approximately 35% of its issued and outstanding common stock when the Form 10-KSB was filed." (*Id.* ¶ 17). "The Form 10-KSB also purports to identify all control persons of Uncommon Media, but omits mentioning Rasberry." (*Id.* ¶ 18).

**C.     The Lawsuit**

On August 15, 2002, Plaintiff Securities and Exchange Commission ("Plaintiff" or "Commission") filed this action to restrain and enjoin Defendants from violating the anti-fraud and reporting provisions of the federal securities laws.  (DE 1 ¶ 1).  Plaintiff asserted the following claims: (a) fraud in violation of section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") (codified as amended at 15 U.S.C. § 78j) and Rule 10b-5 promulgated thereunder against all of the Defendants (Count I); (b) violations of section 13(a) of the Exchange Act (codified

as amended at 15 U.S.C. § 78m) and Rules 13a-1 and 12b-20 against Uncommon Media (Count II); (c) aiding and abetting Uncommon Media's violations against Rasberry and Gallo (Count III); and (d) violations of section 13(d) and 16(a) of the Exchange Act (codified as amended at 15 U.S.C. §§ 78m(d), 78p) and Rules 13d-1 and 16a-3(a) against Rasberry (Count IV).  (DE 1 ¶¶ 19–33).

Rasberry was served with a copy of the summons and complaint on August 20, 2002.  (DE 8).  Gallo's attorney accepted service of the summons and complaint on or about August 27, 2002. (DE 11 at 3).

On October 3, 2002, the District Court issued an order staying the proceedings while the Government prosecuted a criminal case against the individual defendants styled <u>United States v. Douglas Rasberry, et al.</u>, Case No. 02-20637-CR-MARRA.[2] (DEs 10, 12, 16). On June 22, 2004, a criminal judgment was entered against Rasberry after he pled guilty to one count of conspiracy to commit wire fraud, mail fraud and securities fraud. (*See* Case No. 02-20637-CR-MARRA [DEs 210, 250]). On February 28, 2005, a criminal judgment was entered against Gallo after he pled guilty to one count of conspiracy to commit wire fraud, mail fraud and securities

---

[2] In July 2004, Gallo was indicted in another criminal action that also involved Uncommon Media. (*See* Case No. 04-20478-CR-MARRA). The Commission brought a civil action against Gallo for this conduct, which is pending before this Court. (*See SEC v. Uncommon Media Group, Inc., et al.*, Case No. 04-80272-CIV-HURLEY).

fraud.[3]  (*See* Case No. 02-20637-CR-MARRA [DE 257]).

After the criminal cases against Rasberry and Gallo concluded, the stay in this case was lifted on March 31, 2005 and the Defendants were ordered to serve an answer to the Complaint within twenty days. (DE 24). The Defendants, however, failed to do so.

On May 13, 2005, Plaintiff moved for entry of a clerk's default against the individual defendants "for failure to plead or otherwise defend." (DE 26). The Clerk of Court entered default against Gallo and Rasberry on May 16, 2005. (DE 27).

Plaintiff then moved for entry of default judgment against the individual defendants, seeking, among other things, permanent injunctive relief and the imposition of civil penalties pursuant to the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 (the "Remedies Act") § 201, 15 U.S.C. § 78u(d)(3) (2001). (DE 28 at 3–8).  The District Court granted this motion and entered a civil judgment against Rasberry and Gallo on October 11, 2005.[4]  (DE 33).  In doing so, the District Court retained jurisdiction to determine a specific civil penalty upon motion. (DE 33 at 4).

_____

[3] On that same day, judgment was entered against Gallo after he pled guilty to conspiracy to commit wire and mail fraud in the other criminal case against him. (*See* Case No. 04-20478-CR-MARRA [DE 40]).

[4] A judgment of permanent injunction was entered against Uncommon Media by consent on October 5, 2005.  (DE 30).

Plaintiff, in turn, timely filed a Motion to Set a Civil Penalty against Rasberry and Gallo.[5] (DEs 34-1, 35-1). This matter is currently pending before the Court and has been referred to the undersigned for a Report and Recommendation. (DE 39).

## II.   DISCUSSION

### A.   *Legal Standards*

#### 1.   Default Judgment

"The effect of a default judgment is that the defendant admits the plaintiff's well-pled allegations of fact." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999). "Liability, if well-pleaded, is established by virtue of default." *Id.* (citing *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987)). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default." *Id.* "Rather, the Court determines the amount and character of damages to be awarded." *Id.* (citing 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2688 at 58–59 (3d ed. 1998)).

---

[5] Plaintiff also moved for an order dismissing its civil penalty claim against Uncommon Media. (DEs 34-2, 35-2). That portion of the motion is not addressed in this Report and Recommendation because the District Court granted this relief, and dismissed the civil penalty claim against Uncommon Media with prejudice, on January 17, 2006. (DE 36).

A default judgment "may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979);[6] *see also Commodity Futures Trading Comm'n v. Marquis Fin. Mgmt. Sys., Inc.*, No. Civ. A. 03-74206, 2005 WL 3752233, at **1–7 (E.D. Mich. June 8, 2005) (entering default judgment without an evidentiary hearing, explaining that a hearing to determine the amount of civil penalties was unnecessary because the amount claimed was "liquidated or capable of ascertainment from the definite figures contained in the documentary evidence or in detailed affidavits"); *SEC v. Inv. Tech., Inc.*, No. CV-S-03-0831-KJD-RJJ, 2004 WL 2812108, at **1–4, 7 (D. Nev. Oct. 22, 2004) (entering default judgment without an evidentiary hearing, explaining that judgment by default was appropriate because, *inter alia*, the sums of money at stake, including disgorgement, prejudgment interest and civil penalties, were "readily ascertainable").

"An evidentiary hearing is not a *per se* requirement; indeed, Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone." *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). For example, "no such hearing is required where all essential evidence is already of record." *Id.* (citing *SEC v. First Fin. Group of Tex.*,

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

*Inc.*, 659 F.3d 660, 669 (5th Cir. 1981)); *see also SEC v. Marker*, 427 F. Supp. 2d 583, 586–95 (M.D.N.C. 2006) (entering default judgment, without an evidentiary hearing, and imposing civil penalties where the district court concluded that the allegations of the complaint, taken as true, established that the defendants violated the securities laws); *United States v. Gant*, 268 F. Supp. 2d 29, 30–34 (D.D.C. 2003) (entering default judgment, without an evidentiary hearing, and assessing civil penalties under 5 U.S.C. app. § 104(a) where the district court concluded, after reviewing the record, that "the defendant knowingly and willingly failed to comply with" the federal statute); *cf. SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421–26 & n.2 (D. Md. 2005) (entering default judgment without an evidentiary hearing, explaining that a hearing to determine the amount of civil penalties was unnecessary because civil penalties are not "damages" payable to the victim for purposes of Rule 55(b)(2); they are "fines or assessments payable to the government") (citing *Ellett Bros. v. United States Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001)).[7]

---

[7] *See generally* S. REP. NO. 101-337 (1990), *as reprinted in* 1990 WL 263550 (explaining that civil penalties are fines designed to deter unlawful conduct and "help maintain public confidence in the integrity of the markets"); H.R. REP. NO. 101-616 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 1379, 1380–85 (same).

### 2.    Civil Penalties

Section 201 of the Remedies Act authorizes a district court to impose, upon a proper showing, a civil penalty to be paid by any person who violates the Exchange Act or the rules or regulations thereunder. *See* Securities Enforcement Remedies and Penny Stock Reform Act of 1990, Pub. L. No. 101-429, § 201, 104 Stat 931 (1990); *see also* 5 U.S.C. § 78u(d)(3)(A) (2001). "The Remedies Act was enacted to achieve 'the dual goals of punishment of the individual violator and deterrence of future violations.'" *SEC v. Coates*, 137 F. Supp. 2d 413, 428 (S.D.N.Y. 2001) (quoting *SEC v. Moran*, 944 F. Supp. 2d 286, 296 (S.D.N.Y. 1996)); *see also Marker*, 427 F. Supp. 2d at 592 (same). "The amount of the penalty shall be determined by the court in light of the facts and circumstances." 15 U.S.C. § 78u(d)(3)(B)(i).

The Remedies Act establishes three tiers of penalties, with the third tier being the most severe. For each violation, the first tier allows for a penalty not to exceed the greater of (i) $5,000 for a natural person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation. *See id.* "[I]f the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," the second tier allows for a penalty for each such violation not to exceed the greater of (i) $50,000 for a natural person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation. *Id.* § 78u(d)(3)(B)(ii).

Finally, if (a) the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, and (b) the violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons, the third tier allows for a penalty for each such violation not to exceed the greater of (i) $100,000 for a natural person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation. *See id.* § 78u(d)(3)(B)(iii).

A statutory adjustment for inflation has increased the maximum penalty amount by ten percent for violations occurring after December 9, 1996 and before February 2, 2001. *See, e.g.*, 17 C.F.R. § 201.1001 (2006). For example, the third tier penalty in the amount of $100,000 has been increased to $110,000. *See* 17 C.F.R. pt. 201, subpt. E, tbl. I.

**B.** **The Court Should Impose a One-Time, Third Tier Penalty Against Each Individual Defendant in the Amount of $110,000 Because the Violations of Securities Laws Involved Fraud, Deceit, Manipulation, or Deliberate or Reckless Disregard of a Regulatory Requirement, and Directly or Indirectly Created a Significant Risk of Substantial Losses to Other Persons**

Plaintiff requests that this Court impose a one-time, third tier penalty against each individual defendant in the amount of $110,000. (DE 34 at 4–6). It argues that the undisputed record demonstrates "Rasberry and Gallo acted fraudulently and created a significant risk of substantial losses to other persons, even though their

11

attempts to defraud investors were thwarted." (*Id.* at 6). Plaintiff argues further that they acted "egregiously by agreeing to receive kickbacks in exchange for fraudulently manipulating Uncommon Media's stock" and acted with a "high degree of scienter" as demonstrated by the criminal convictions for the same conduct. (*Id.*).

Plaintiff maintains that a one-time, third tier penalty of $110,000 is justified, especially since it could seek a statutory penalty up to $110,000 for each separate violation as alleged in Counts I, III and IV of the Complaint. (*See id.*). It argues that a third tier penalty for one violation is necessary and appropriate to punish each defendant and to deter future securities laws violations. (*See id.*).

**1.    An Evidentiary Hearing is not Required in this Case**

At the outset, the undersigned concludes that this Court need not conduct a hearing before imposing civil penalties against Rasberry and Gallo. First, Rasberry and Gallo failed to file a response to the Complaint, they failed to oppose Plaintiff's motions for entry of default and entry of default judgment, and they failed to file a memorandum of law in opposition to the motion currently at issue.[8] Because the defendants are "unresponsive parties," judgment by default is appropriate in this case. *See, e.g., Gant,* 268 F. Supp. 2d at 32–33 (concluding that default judgment was

---

[8] This failure alone is cause for granting Plaintiff's motion. *See* S.D. FLA. LOC. R. 7.1(C) (explaining that failure to file a memorandum in opposition "may be deemed sufficient cause for granting the motion by default").

appropriate where defendant was deemed a "totally unresponsive party").

Second, all essential evidence is already of record.  *See Smyth*, 420 F.3d at 1232 n.13.  Indeed, Rasberry and Gallo have admitted the well-pled allegations of fact in the Complaint and liability has already been established by virtue of the default judgment. *See Marker*, 427 F. Supp. 2d at 586–95; *Gant*, 268 F. Supp. 2d at 30–34.

Third, the amount claimed—*i.e.*, $110,000—is a liquidated sum or one capable of mathematical calculation.  *See Marquis Fin. Mgmt. Sys., Inc.*, 2005 WL 3752233, at **1–7; *Inv. Tech., Inc.*, 2004 WL 2812108, at **1–4, 7.

Fourth, Plaintiff is not seeking "damages" in this case for purposes of Rule 55(b)(2) because "civil penalties are not 'damages' payable to the victim" for purposes of Rule 55(b)(2) (calling for a hearing after entry of default if "necessary . . . to determine the amount of damages"); they are "fines or assessments payable to the government."  *Lawbaugh*, 359 F. Supp. 2d at 423–24 n.2 (quoting *Ellett Bros.*, 275 F.3d at 388).

## 2. Defendants Douglas Rasberry and Lawrence Gallo Violated the Federal Securities Laws

The well-pled allegations of the Complaint, taken as true, establish that the defendants violated the anti-fraud and reporting provisions of the federal securities

laws as alleged in Counts I, III and IV.  Each count will be addressed in turn below.

> a.     **Count I (Rasberry and Gallo) — Anti-Fraud Violations:**
> **Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder**

Section 10(b) of the Exchange Act and Rule 10b-5 thereunder "prohibit fraudulent conduct in connection with the purchase or sale of securities." *Marker*, 427 F. Supp. 2d at 589; *see also* 15 U.S.C. § 78j (2001); 17 C.F.R. § 240.10b-5 (2001). "These provisions generally prohibit schemes or artifices to defraud in connection with the offer, sale, or purchase of securities." *Marker*, 427 F. Supp. 2d at 589.  Specifically, Rule 10b-5 states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a)     To employ any device, scheme, or artifice to defraud,
>
> (b)     To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c)     To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

"The Commission must establish that a defendant acted with scienter to prove violations . . . of the Exchange Act and Rule 10b-5." *Marker*, 427 F. Supp. 2d at 589

(citing *Aaron v. SEC*, 446 U.S. 680, 691, 695–96 (1980)). "Moreover, in order to establish that these provisions were violated through misrepresentations or omissions, the Commission must show that the misrepresentations or omissions were material." *Id.* (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)). "A misrepresentation or omission is material if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *Id.* "In other words, a misrepresentation is material when it would have 'misled a reasonable investor about the nature of the investment.'" *Id.* (quoting *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 761 (2d Cir.1991)).

In connection with the offer, sale or purchase of Uncommon Media stock, Rasberry and Gallo violated section 10(b) of the Exchange Act and Rule 10b-5 thereunder by committing, *inter alia*, the following acts: (a) employing, agreeing to, and participating in a scheme to defraud whereby Rasberry, an undisclosed control person of Uncommon Media, would sell $8 to $10 million of Uncommon Media stock to a European-based investment fund in return for kickbacks to the company and themselves; (b) using several offshore entities to conceal Rasberry's ownership interest in Uncommon Media stock and avoid reporting such ownership to the Commission; and (c) filing misleading information, statements or reports with the

Commission, including a Form 10-KSB for the year ending December 31, 2000 which failed to disclose material information concerning Rasberry's beneficial ownership of Uncommon Media stock. (DE 1 ¶¶ 1–21). *See also* 17 C.F.R. § 240.10b-5.

Rasberry and Gallo acted with scienter when they participated in this fraudulent scheme because, *inter alia*, they agreed to participate in the scheme so long as they received a portion of the undisclosed kickback and did so after being told that the purported manager of the Fund was corrupt and had knowledge of the illicit activities. (DE 1 ¶¶ 8–11). Moreover, the Court takes judicial notice that Rasberry and Gallo were criminally convicted for the same conduct. (*See* Case No. 02-20637-CR-MARRA [DEs 210, 250, 257]). Finally, the misrepresentations or omissions made while participating in this fraudulent scheme, including the failure to disclose Rasberry's beneficial ownership of Uncommon Media stock and the corrupt plan to sell a significant amount of the secretly owned stock, were material because they would have misled a reasonable investor about the nature of the investment. *See, e.g., SEC v. Gen. Refractories Co.*, 400 F. Supp. 1248, 1253, 1257–58 (D.D.C. 1975) (concluding that the failure to disclose ownership of stock and other information "were material facts to which an investor might have attached importance in determining whether to buy, sell or hold . . . securities" and "should

16

have been disclosed to enable stockholders to appraise their corporation and its management and vote their shares intelligently"). Therefore, Rasberry and Gallo violated section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

**b.    Count III (Rasberry and Gallo) — Aiding and Abetting Reporting Violations: Section 13(a) of the Exchange Act and Rules 13a-1 and 12b-20 Thereunder**

Section 13(a) of the Exchange Act and Rule 13a-1 thereunder require every issuer having securities registered with the Commission to file certain financial information, documents and annual reports, and under Rule 12b-20, issuers have a duty to correct any misstatements or omissions contained in the reports as necessary to ensure that they are not misleading. *See* 15 U.S.C. § 78m(a) (2001); 17 C.F.R. §§ 240.12b-20, .13a-1 (2001). An issuer violates these provisions if it files a report that contains materially false or misleading information. *See, e.g.*, *SEC v. Falstaff Brewing Corp.*, 629 F.2d 62, 70–73 (D.C. Cir. 1980).

Secondary liability is also available against "any person that knowingly provides substantial assistance" to another violator of the Exchange Act. *See* 15 U.S.C. § 78t(e) (2001). In order to establish liability of persons who aid and abet violations of the federal securities laws, the following elements must be satisfied: (1) the existence of an independent primary violation; (2) the accused party is generally aware of his role in the primary violation; and (3) the accused party knowingly

17

provides substantial assistance. *See Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1045 (11th Cir. 1986); *Woods v. Barnett Bank of Fort Lauderdale*, 765 F.2d 1004, 1009–13 (11th Cir. 1985); *In re Checkers Sec. Litig.*, 858 F. Supp. 1168, 1178–79 (M.D. Fla. 1994); *SEC v. Sugilight, Inc.*, No. 6:02-CV-431-ORL18KRS, 2002 WL 31619081, *2 (M.D. Fla. Oct. 15, 2002). "Whether the assistance was 'substantial' depends on the totality of the circumstances." *In re Checkers Sec. Litig.*, 858 F. Supp. at 1179 (citing *Woods*, 765 F.2d at 1010).

Count III of the Complaint alleges that Rasberry and Gallo aided and abetted or caused Uncommon Media to violate section 13(a) of the Exchange Act and Rules 13a-1 and 12b-20 thereunder "by filing with the Commission a materially false financial and informational statement on a Form 10-KSB." (DE 1 ¶ 28). Thus, the question presented is whether Plaintiff has satisfied the three elements above in order to hold Rasberry and Gallo liable for Uncommon Media's alleged violations.

The first prong has been satisfied. Indeed, the well-pled allegations of the Complaint, taken as true, establish that Uncommon Media violated section 13(a) of the Exchange Act and Rules 13a-1 and 12b-20 thereunder as charged in Count II. "Specifically, Uncommon Media's annual report, filed on a Form 10-KSB, failed to disclose Rasberry's controlling interest in Uncommon Media." (DE ¶ 1 24). This failure violates the reporting provisions of the Exchange Act. *See Falstaff Brewing*

*Corp.*, 629 F.2d at 70–73.

The second and third prongs have also been satisfied. Rasberry and Gallo were generally aware of their role in Uncommon Media's reporting violation because both of them agreed to participate in the fraudulent scheme. (*See id.* ¶¶ 1–29). At all relevant times, Gallo was "the chairman, chief executive officer, and a director of Uncommon Media" and Rasberry was "an undisclosed control person of Uncommon Media." (*See id.* ¶¶ 3–4). They also knowingly provided substantial assistance as demonstrated by the following facts, including but not limited to: (1) Rasberry created at least ten different offshore entities to avoid reporting his ownership of Uncommon Media stock; (2) each entity held less than 5% of Uncommon Media's shares issued and outstanding; and (3) Rasberry and Gallo caused Uncommon Media to file an annual report, on a Form 10-KSB, that failed to disclose Rasberry's controlling interest in Uncommon Media. (*See id.* ¶¶ 12, 16–18, 28). Therefore, Rasberry and Gallo aided and abetted Uncommon Media to violate section 13(a) of the Exchange Act and Rules 13a-1 and 12b-20 thereunder.

> **c.      Count IV (Rasberry) — Reporting Violations: Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1 and 16a-3(a) Thereunder**

Sections 13(d) and 16(a) of the Exchange Act require any person, after acquiring a 5% and 10% beneficial ownership interest, respectively, in the equity

securities issued by a company registered with the Commission, to file a statement with the Commission containing such information as sections 13(d) and 16(a), and Rules 13d-1 and 16a-3(a) thereunder, prescribe. *See* 15 U.S.C. §§ 78m(d), 78p(a) (2001); 17 C.F.R. §§ 240.13d-1, .16a-3(a) (2001). Sections 13(d) and 16(a) allow the Commission and the public to identify those persons who can influence or control the issuer as a result of their beneficial ownership. *See, e.g., Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513, 1515 (11th Cir. 1985) (explaining that the purpose of the Williams Act amendments, which included section 13(d) of the Exchange Act, "was to protect investors in target corporations from takeover bidders who up to that point had been able to operate in secrecy"); *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1165 (D.C. Cir. 1978) (stating that section 13(d) "was designed, in part, to allow investors an opportunity to know of potential changes in corporate control and to evaluate the situation"). A person violates the reporting provisions if they fail to file complete, accurate and timely forms or schedules with the Commission. *See, e.g., SEC v. Solucorp Indus. Ltd.*, 274 F. Supp. 2d 379, 420 (S.D.N.Y. 2003) (concluding that officers of a corporation violated section 16(a) of the Exchange Act when they failed to file complete, accurate and timely forms); *SEC v. IMC Int'l, Inc.*, 384 F. Supp. 889, 893 (N.D. Tex.) (concluding that non-disclosures by "control person" of publicly traded corporation constituted "wilful violations" of section 13(d) of the

Exchange Act and Rule 13d-1 thereunder), *aff'd*, 505 F.3d 733 (5th Cir. 1974).

In this case, the well-pled allegations of the Complaint demonstrate that Rasberry, through certain offshore entities, acquired approximately 35% of Uncommon Media's common stock, and failed to file any form or schedule with the Commission disclosing this information. (DE 1 ¶¶ 12, 15–18, 24, 32). Therefore, Rasberry violated sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1 and 16a-3(a) thereunder.

### 3. A Third Tier Penalty in the Amount of $110,000 is Appropriate in this Case

After a careful review of the entire record and applicable law, the undersigned concludes that the Court should impose a third tier penalty in the amount of $110,000 to punish each defendant and to deter future securities laws violations because the violations of securities laws by Rasberry and Gallo involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement, and directly or indirectly created a significant risk of substantial losses to other persons. *See* 15 U.S.C. § 78u(d)(3)(B)(iii); 17 C.F.R. § 201.1001; 17 C.F.R. pt. 201, subpt. E, tbl. I. A private, undisclosed sale of approximately $8 to $10 million worth of Uncommon Media common stock to the Fund may have injured other shareholders or unsuspecting investors to the extent such action would have manipulated the

market, impacted the value of Uncommon Media stock, and persuaded others to purchase or sell the stock. This activity, combined with Rasberry's and Gallo's fraudulent plan to retain a portion of the proceeds for themselves and kickback approximately 45% of the purchase price to the UCA and his associates, may have resulted in additional corporate losses. Thus, at a minimum, Rasberry's and Gallo's actions, if they had not been thwarted, would have directly or indirectly created a significant "risk" of substantial losses to other persons. *See, e.g.*, *Lawbaugh*, 359 F. Supp. 2d at 421, 426 (entering default judgment and imposing a third tier penalty where the complaint alleged, *inter alia*, that the defendant diverted funds through a series of fraudulent transactions, skimmed money from payments made to purchase assets, directed payments to companies he secretly controlled for services never performed, altered documents to conceal his fraud and deceived investors by preparing and disseminating false account statements); *SEC v. McCaskey*, No. 98CIV6153SWKAJP, 2002 WL 850001, at **1, 12–16 (S.D.N.Y. Mar. 26, 2002) (recommending a third tier penalty where magistrate judge concluded, among other things, that the defendant's manipulation of the market designed to create the illusion of active trading and inflate the price of securities directly or indirectly created a significant risk of substantial losses to other persons).

22

Assuming *arguendo* Rasberry's and Gallo's violations would not have directly or indirectly created a significant risk of substantial losses, their actions clearly qualify for second-tier penalties. The second tier authorizes this Court to impose a civil penalty in the amount of $55,000 for each violation. *See* 15 U.S.C. § 78u(d)(3)(B)(ii); 17 C.F.R. § 201.1001; 17 C.F.R. pt. 201, subpt. E, tbl. I. As discussed above, Rasberry violated the securities laws on three occasions (Counts I, III and IV) and Gallo violated the securities laws on two occasions (Counts I and III). At $55,000 per violation, Rasberry and Gallo qualify for the $110,000 penalty requested by Plaintiff. *See McCaskey*, 2002 WL 850001, at **13–14 & n.21 (concluding that the defendant would qualify for the $100,000 third-tier penalty requested by the Commission even if the violations "did not create a significant risk of loss" because the defendant, who committed multiple violations, qualified for second-tier penalties at $50,000 for each violation). Accordingly, the undersigned **RECOMMENDS** that Plaintiff's Motion to Set a Civil Penalty be **GRANTED** and the District Court impose a one-time, third tier penalty against each individual defendant in the amount of $110,000. *See* 15 U.S.C. § 78u(d)(3)(B)(iii); 17 C.F.R. § 201.1001; 17 C.F.R. pt. 201, subpt. E, tbl. I.

### III.   RECOMMENDATION TO THE DISTRICT COURT

In summary, the undersigned **RECOMMENDS** that Plaintiff's Motion to Set a Civil Penalty (DEs 34-1, 35-1) be **GRANTED** and the District Court impose a one-time, third tier penalty against Rasberry and Gallo in the amount of $110,000. The undersigned further **RECOMMENDS** that the District Court enter a separate final default judgment as to each individual defendant as to the civil penalty applicable to that particular defendant, and that the final default judgment direct the amounts be paid within a time period established by the District Court and that payments be made to the Clerk of Court pursuant to further instructions from the District Court concerning the manner of deposit and distribution. *Cf.* 15 U.S.C. § 78u(d)(3)(C) (summarizing the procedures for collecting a civil penalty); *Marker*, 427 F. Supp. 2d at 594–95 (setting forth terms of civil penalty payment); *Lawbaugh*, 359 F. Supp. 2d at 428–29 (same); *Inv. Tech., Inc.*, 2004 WL 2812108, at **7–8 (same).

### <u>NOTICE OF RIGHT TO OBJECT</u>

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Daniel T. K. Hurley, United States District Judge for the Southern District of Florida, within ten (10) days of being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(C); *United*

*States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982).  Failure to timely file written objections shall bar the parties from attacking on appeal the factual findings contained herein.  *See LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND SUBMITTED** in Chambers this *15* day of September, 2006, at West Palm Beach in the Southern District of Florida.

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Hon. Daniel T. K. Hurley, United States District Judge, United States District
   Court for the Southern District of Florida

Christopher E. Martin, Esq. (counsel for Plaintiff)

Alfred Greco, Esq. (counsel for Defendant Uncommon Media)

Douglas Rasberry, *pro se*
131 Mt. Norquay Park S.E.
Calgary, Alberta T2Z 3R5
Canada

Lawrence Gallo, *pro se*
Reg # 69153-053
FCI Fort Dix
Federal Correctional Institution
P.O. Box 2000
Fort Dix, NJ 08640